IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| GREAT AMERICAN ALLIANCE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> DOCTORS HOSPITAL OF AUGUSTA, LLC, <br><br> Defendant. | * <br> * <br> * <br> * <br> * <br> *   CV 123-190 <br> * <br> * <br> * <br> * <br> * <br> * |

**O R D E R**

Before the Court is Defendant's partial motion to dismiss. (Doc. 9.) For the following reasons, Defendant's motion is **GRANTED** as to Count IV and Count VI and **DENIED** as to Count V.

**I. BACKGROUND**

This action arises out of a billing dispute between Plaintiff, an insurance company, and Defendant, a hospital. (Doc. 6, at 1, 10.) The underlying incident occurred on June 30, 2023, when two individuals working at US Engine Valve's South Carolina facility were injured by an explosion at their jobsite. (Id. at 9-10.) As a result of the incident, both individuals sustained life threatening injuries and were sent to Defendant for medical treatment. (Id. at 9-10.) After being admitted for treatment by Defendant, the individuals brought workers' compensation claims

pursuant to South Carolina's Workers' Compensation Act to cover the costs of their care. (Id. at 10.) At the time of the incident, US Engine Valve maintained a "Workers' Compensation and Employers Liability Insurance Policy," Policy No. WC 1705541 11 ("the Policy"), from Plaintiff that covered US Engine Valve's South Carolina operations. (Id. at 14.) Under the terms of the Policy, Plaintiff was obligated to "pay promptly when due the benefits required of its insured by the South Carolina's Workers' Compensation Act." (Id. at 19 (quotations omitted).)

Pursuant to the Policy, Plaintiff received a total of ten invoices from Defendant for the months of care provided to the two US Engine Valve employees. (Id. at 10.) Nine of the invoices related to the first employee's care, totaling $1,030,606.55. (Id.) The final invoice, related to the second employee's care, totaled $7,713,660.29. (Id.) Plaintiff, both upon receipt and at present, disputes the amounts charged, claiming the invoices double billed for various services and included charges for supplies not reflected in the documentation as supplies used. (Id. at 3, 11.) Nonetheless, to comply with its obligations under the Policy and South Carolina's Workers' Compensation Act, Plaintiff paid $73,205.62 towards the first individual's invoices and $511,945.43 towards the second individual's invoice pursuant to a reservation of rights. (Id. at 11.) Plaintiff contends the amounts paid are the "maximum sums payable" under both the Policy

2

and the South Carolina's Workers' Compensation Act. (Id. at 12.) Defendant maintains it is entitled to the full amount of the invoices and demands payment of the remaining balances. (Id. at 13.)

Plaintiff brings this action seeking various forms of relief with regards to its payment obligations. Specifically, Plaintiff brings three counts for declaratory relief as to its payment obligations; one count seeking damages for Defendant's unjust enrichment; one count alleging Defendant's billing practices violated the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"); and one count alleging Defendant's billing practices violated the Georgia Fair Business Practices Act ("GFBPA"). (Id. at 16-34.) At present, Defendant seeks only to dismiss Plaintiff's claims alleging unjust enrichment and statutory violations, as well as Plaintiff's related requests for compensatory, treble, and punitive damages. (Doc. 9, at 5.) Plaintiff responded in opposition to Defendant's motion (Doc. 23) and Defendant replied in support (Doc. 26). Defendant's motion is now ripe for the Court's review.

## II. UNJUST ENRICHMENT (COUNT IV)

Count IV of Plaintiff's amended complaint seeks restitution and disgorgement of any overpayment to Defendant due to Defendant's "improper and/or inaccurate" billing. (Doc. 6, at 28-29.)

3

Defendant moves to dismiss this claim, arguing Plaintiff fails to state a claim and any recovery for amounts allegedly overpaid is barred by the voluntary payment doctrine. (Doc. 9, at 6.) The Court addresses each argument in turn.

**A. Failure to State a Claim**

Defendant argues Plaintiff fails to plead sufficient facts to support the essential elements of an unjust enrichment claim. (Id.) In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 545. "Nor does a complaint suffice if it tenders 'naked assertions' devoid

4

of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 679. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)). Allegations in a complaint must be taken as true and "read . . . in the light most favorable to the plaintiffs." Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993) (citation omitted).

To establish a claim for unjust enrichment, a plaintiff must plead facts sufficient to plausibly show "(1) a benefit has been conferred, (2) compensation has not been given for receipt of the benefit, and (3) the failure to so compensate would be unjust." Chartis Ins. Co. of Canada v. Freeman, No. CV 111-193, 2013 WL 12121864, at *2 (S.D. Ga. Mar. 18, 2013). Plaintiff alleges it was overbilled for the services rendered and, as a result, it overpaid Defendant. (Doc. 6, at 2-3, 28-29.) Plaintiff contends it was not facially discernable how much of each invoice was legitimate, and due to time constraints in auditing and to comply with its legal obligations, it paid the maximum amount it could potentially be legally required to pay. (Id. at 2-3.) Allegations

5

of overpayment such as this provide a sufficient basis to bring an unjust enrichment claim. See <u>D & H Const. Co. v. City of Woodstock</u>, 643 S.E.2d 826 (Ga. Ct. App. 2007) (finding allegations of overpayment gave rise to an unjust enrichment claim). While it is undisputed Plaintiff only paid a small percentage of the total billed amount, Plaintiff nonetheless alleges the amount paid was beyond what Defendant was entitled to. (Doc. 6, at 29, 34.) Further, Plaintiff's amended complaint provides more than a "threadbare recital" of the elements; rather, it alleges all invoices in question reflect that

> Doctors Hospital double-billed for saline, oxygen, bandages, dressings, adhesives, and even the use of surgical tools during surgery, and surgical supplies which are *already included* in the operating room charges; double-billed for nurses administering blood transfusions and respiratory vent management, which is again included in the room charges; billed for fluids to administer medications which is inclusive in the medication charges; and billed for medication and skin graft units not reflected in the documentation of supplies actually used.

(<u>Id.</u> at 10-11.) As Defendant concedes, Plaintiff need not "plead every instance of overbilling with precision", and specific facts such as these are more than sufficient to satisfy the "short and plain statement" required to withstand a motion to dismiss. (Doc. 26, at 5); <u>Twombly</u>, 550 U.S. at 555; see <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." (alterations

6

adopted) (citation and internal quotation marks omitted)). Thus, reading the amended complaint in the light most favorable to Plaintiff, the Court finds Plaintiff alleged facts sufficient to survive a motion to dismiss for failure to state a claim as to unjust enrichment. Defendant's motion to dismiss is thus **DENIED** on this ground.

**B. Voluntary Payment Doctrine**

Defendant, alternatively, argues any recovery for the amounts paid is barred by the voluntary payment doctrine. (Doc. 9, at 8-9.) The voluntary payment doctrine provides in relevant part:

> Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property.

O.C.G.A. § 13-1-13. "The party seeking to recover the payment bears the burden of showing that the voluntary payment doctrine does not apply." Encompass Home & Auto Ins. Co. v. Stevens Hale & Assocs., 621 F. Supp. 3d 1326, 1335 (S.D. Ga. 2022) (citations omitted).[1]

---

[1] Plaintiff argues dismissal on this ground is inappropriate under Gulf Life Ins. Co. v. Folsom. (Doc. 23, at 12 (citing 349 S.E.2d 368, 373 (Ga. 1986)). Under the Gulf Life Ins. line of cases, when payment is made *by mistake,* the trier of fact must balance the equities, making summary judgment inappropriate. 349 S.E.2d, at 373. However, there are no facts indicating Plaintiff mistakenly sent payment. Plaintiff's amended complaint makes clear the payment was intentionally sent, as Plaintiff even included a reservation of rights because of suspected overbilling. (Doc. 6, at 3, 11.) Therefore, this line of cases is not applicable. See Kuchenmeister v. HealthPort Techs., LLC, 753 F. App'x 794, 799 (11th Cir. 2018) (affirming dismissal of claim based on Georgia's

Under Georgia law, "the party seeking to recover must prove that its payment was not voluntarily made because certain material facts were not known at the time of payment, or because a valid reason existed for its failure to determine the truth." Id. at 1335-36 (citations and emphasis omitted). "Even if the plaintiff does not have actual knowledge of all of the facts, the doctrine will still bar recovery where the plaintiff had constructive knowledge of the *material facts*." Ellison v. Southstar Energy Servs., LLC, 679 S.E.2d 750, 754 (Ga. Ct. App. 2009), aff'd, 691 S.E.2d 203 (Ga. 2010) (emphasis added); see also Applebury v. Teachers' Ret. Sys. of Ga., 620 S.E.2d 452, 453 (Ga. Ct. App. 2005) ("[T]he party seeking to recover must prove that its payment was not voluntarily made because certain *material facts* were not known at the time of payment, or because a valid reason existed for its failure to determine the truth." (citation omitted and emphasis added)).

Plaintiff argues recovery is not barred because, due to Defendant's "artifice" and the time constraints in auditing the invoices, it did not know the exact amount it was overbilled at the time of payment. (Doc. 23, at 10-11.) However, it is undisputed Plaintiff knew, or at the very least strongly suspected, it was being overbilled at the time of payment. Plaintiff included a reservation of rights with its payment because of these suspicions and contends the overbilling was "patent from the face

---

voluntary payment doctrine when plaintiffs' payment was intentionally made despite knowing they were likely overcharged).

8

of the invoices." (Doc. 6, at 3; Doc. 23, at 9.) Moreover, Plaintiff's amended complaint includes a detailed list of the problematic line items. (Doc. 6, at 10-11.) The Eleventh Circuit, in a factually similar case, found that when a plaintiff disputed the billed amount at the time of payment, it was clear they knew the *material facts* at that time-namely, once again, that they were overbilled. Kuchenmeister, 753 F. App'x at 798. Thus, the Court finds Plaintiff knew the material facts at the time of payment despite contending it did not know the exact details. Moreover, to the extent Defendant's billing practices may have constituted "artifice," there is no suggestion this artifice induced Plaintiff to pay. Rather, for the reasons stated above, Plaintiffs amended complaint reflects that despite being aware of the facially apparent overbilling and unbundling, it decided to pay the maximum potentially required amount. See Cotton v. Med-Cor Health Information Sys., 472 S.E.2d 92, 96 (Ga. Ct. App. 1996) (finding voluntary payment doctrine applied because defendant's potential "artifice" in billing practices did not induce plaintiff when plaintiff was admittedly aware of the overbilling at the time of payment).

Plaintiff also contends the voluntary payment doctrine is inapplicable because Plaintiff was under a legal obligation to pay under both South Carolina regulations and its contractual obligations. (Doc. 23, at 11-12.) Plaintiff is correct that under

9

the Policy, it was legally obligated to make prompt payment of any required amounts. (Doc. 6, at 19.) However, while Plaintiff was obligated to promptly pay amounts rightfully charged, Plaintiff had no legal obligation to pay the *maximum* amount potentially recoverable. See <u>Mitchell v. Equitable Fin. Life Ins. Co.</u>, No. 3:20-CV-52, 2021 WL 9763346 (N.D. Ga. Aug. 24, 2021) (finding legal obligation to pay the disputed sum when the contractual obligation required payment of the full and exact amount actually paid). To the extent Plaintiff paid any amount above that readily discernable to be properly billed, Plaintiff's payments were not legally obligated, and Plaintiff has not carried its burden of showing why it would pay the maximum amount, versus, more prudently, some minimum discernable amount. Moreover, while Plaintiff paid under protest, this only protects Plaintiff in a situation of duress or coercion, neither of which have been alleged here. See <u>Kuchenmeister</u>, 753 Fed. App'x at 798-99. Based on the foregoing, Plaintiff fails to carry its burden of showing the voluntary payment doctrine does not apply, and Defendant's motion to dismiss Count IV is **GRANTED**.

### III. VIOLATION OF GUDTPA (COUNT V)

Plaintiff alleges Defendant's billing practices violated GUDTPA by presenting overinflated invoices. (Doc. 6, at 31.) Under GUDTPA, "[a] person likely to be damaged by a deceptive trade

10

practice of another may be granted an injunction against it . . . ." O.C.G.A. § 10-1-373(a). Defendant moves to dismiss this claim for several reasons, each addressed below. (Doc. 9, at 10.)

**A. Failure to State a Claim**

Defendant argues Plaintiff fails to allege sufficient facts for its GUDTPA claim to survive a motion dismiss, relying on much of the same reasoning articulated in support of dismissal of Plaintiff's unjust enrichment claim. (Id. at 13.) Specifically, Defendant contends Plaintiff only makes conclusory statements regarding double billing and upcoding. (Id.) However, for the same reasons provided above, the Court finds Plaintiff provided a sufficient factual basis in support of its allegations that Defendant's bills contained various misrepresentations.

**B. Statutory Standing Under GUDTPA**

Defendant also contends Plaintiff lacks statutory standing under GUDTPA because it has not sufficiently alleged future harm. (Id. at 10-11.) "[I]njunctive relief is the only remedy permitted by [GUDTPA]." Catrett v. Landmark Dodge, Inc., 560 S.E.2d 101, 106 (Ga. Ct. App. 2002). Thus, "[t]o have standing to seek injunctive relief under [GUDTPA], a plaintiff must show . . . that [it] is likely to be damaged in the future by some deceptive trade practice of the defendant." Iler Group, Inc. v. Discrete Wireless, Inc., 90 F. Supp. 3d 1329, 1342 (N.D. Ga. 2015) (citation omitted);

11

see also Collins v. Athens Orthopedic Clinic, 849 S.E.2d 213, 217 (Ga. Ct. App. 2020) (finding an injunction under GUDTPA would serve no purpose when the alleged violation had already occurred and was not ongoing).

While Plaintiff's amended complaint seeks protections from future inflated invoices, Plaintiff alleges no facts indicating there will be future invoices, nor that there is any sort of ongoing relationship between Plaintiff and Defendant outside of this dispute. (See Doc. 6.) Thus, the Court finds Plaintiff has not sufficiently pled a likelihood of receiving additional inflated invoices. Nonetheless, Plaintiff alleges there is an outstanding balance on the disputed invoices, and collection attempts are still being made with regards to that balance. (Id. at 11-12.) Taking this allegation as true, Plaintiff has alleged a future harm sufficient to establish statutory standing under GUDTPA. See Young v. Cmty. Health Sys., Inc., No. 22-14255, 2023 WL 6121795, *2 (11th Cir. Sept. 19, 2023) (finding continued collection efforts for fees already charged constituted ongoing harm).

**C. GUDTPA Exclusion for Conduct Subject to an Extensive Regulatory Regime**

Next, Defendant argues this claim is excluded from GUDTPA because it deals with workers' compensation insurance, which is heavily regulated. (Doc. 9, at 11-13.) GUDTPA excludes from its scope "[c]onduct in compliance with the orders or rules of or a

12

statute administered by a federal, state, or local governmental agency." O.C.G.A. § 10-1-374(a)(1). This includes conduct subject to "extensive regulatory regime[s]." Ne. Ga. Cancer Care, LLC v. Blue Cross & Blue Shield of Ga., Inc., 676 S.E.2d 428, 433-34 (Ga. Ct. App. 2009).[2] The relevant inquiry is not whether a particular remedy is available under the relevant regulatory scheme, but whether the relevant conduct is heavily regulated by such scheme. Bolinger v. First Multiple Listing Service, Inc., No. 2:10-CV-211-RWS, 2014 WL 4803155, at *10 (N.D. Ga. Sept. 26, 2014) (finding defendants' alleged conduct was excluded from GUDTPA because it was heavily regulated under both state and federal laws).

Because courts have analyzed the GFBPA and GUDTPA exemptions interchangeably, the Court finds a brief discussion of the scope of the exemptions in both contexts is warranted. See Ne. Ga. Cancer Care, 676 S.E.2d at 433-34. In the context of GFBPA, there is a split in approaches as to the expansiveness of the exemption. Grammer v. Ferlin, 707 F. Supp. 3d 1392, 1397 (S.D. Ga. 2020). "One line of cases employs a broad interpretation of the [G]FBPA exemption, holding that any transaction occurring within a regulated area of activity is exempt from the [G]FBPA," while "[a]nother line of cases . . . favors a narrow interpretation of the [G]FBPA exemption, holding that the [G]FBPA exempts only

---

[2] Because the exclusions in GUDTPA and GFBPA are substantively similar, the court in Northeast Georgia Cancer Care applied the analysis for whether a transaction is excluded under GFBPA to a claim brought under GUDTPA. 676 S.E.2d at 433-34. Compare O.C.G.A. § 10-1-374 with O.C.G.A. § 10-1-396.

13

specific *conduct* that is subject to state or federal regulations." Id. at 1398 (citations omitted and emphasis in original). "In short, the broad interpretation of the [G]FBPA exemption asks whether the *type of transaction* at issue is regulated, while the narrow interpretation asks whether the *specific conduct* alleged is regulated." Id. (emphasis in original).

Notably, in the context of GUDTPA, the text strongly points in the direction of following the narrow interpretation, as the statute itself regulates "conduct" versus "actions or transactions." Compare O.C.G.A. § 10-1-374 (excluding from GUDTPA recovery based on "[c]onduct in compliance with the orders or rules of or a statute administered by a . . . governmental agency") with O.C.G.A. § 10-1-396 (excluding from GFBPA recovery based on "[a]ctions or transactions specifically authorized" by state or federal laws, rules, and regulations). Nonetheless, under either interpretation, the relevant transaction falls outside of the scope of the exemption.

As an initial matter, it is disputed whether workers' compensation laws govern the amount payable by Plaintiff. (Doc. 23, at 14-15; Doc. 26, at 13-14.) Regardless, the "type of transaction" at the heart of this action is a billing dispute over the legitimacy of amounts charged for medical services. (Doc. 6, at 10-12.) While workers' compensation laws — whether South Carolina's, Georgia's, or neither — may govern the amount

14

ultimately payable, these regulations do not govern how and what hospitals represent and charge for services on the invoices sent to patients. See, e.g., Houston v. Deloach & Deloach, 663 S.E.2d 85, 90 (S.C. Ct. App. 2008) (explaining the scope of South Carolina Workers' Compensation Act as governing compensation of injuries "arising out of and in the course of employment." (citations omitted)). Neither Party contends Defendant's billing practices differ simply because the patients' underlying injuries involved a workplace injury that may be compensable by a workers' compensation insurance policy. Moreover, the specific conduct alleged is "double billing through unbundling," "misrepresenting the characteristic, benefits, and quantities of goods and services provided," and "upcoding . . . services." (Doc. 6, at 30-31.) None of this conduct is regulated by workers' compensation laws. Because the burden is on the Defendant to show dismissal is proper, and they have failed to do so, Defendant's motion to dismiss Count V is **DENIED**. Nonetheless, Defendant may present further argument on this issue in the future if they so desire. See Horne v. Harbour Portfolio VI, LP, 304 F. Supp. 3d 1332, 1344 (N.D. Ga. 2018).

### IV. VIOLATION OF GFBPA (COUNT VI)

Count VI asserts, similarly to Count V, Defendant's billing practices violated GFBPA. (Doc. 6, at 31-34.) GFBPA provides a

15

private cause of action for both damages and equitable relief to those injured by a defendant's deceptive or unfair acts or practices. O.C.G.A. § 10-1-399. Defendant again provides a host of reasons this claim should be dismissed, each addressed below.[3] (Doc. 9, at 14-18.)

### A. Scope of GFBPA

Defendant argues the transaction at issue falls outside of the scope of GFBPA both because it deals with a purely private transaction and because it involves a heavily regulated marketplace. (Doc. 9, at 14.)

#### 1. Private Transaction

"A transaction falls within the scope of the GFBPA if it is a consumer transaction and the alleged offensive activity took place in the conduct of consumer acts or practices, i.e., within the context of the consumer marketplace." Nottingham v. Houston Hosps., Inc., No. 5:18-CV-182, 2018 WL 4604023, at *2 (M.D. Ga. Sept. 25, 2018) (alterations and internal quotations omitted) (citing Zeeman v. Black, 273 S.E.2d 910, 913 (Ga. Ct. App. 1980)). In other words, GFPBA does not extend to suits arising from "essentially private transactions," which have been defined narrowly by Georgia courts. Gilmore v. Acct. Mgmt., Inc., 357 F. App'x 218, 220 (11th Cir. 2009) (distinguishing a privately

---

[3] Defendant includes a single sentence claiming that Plaintiff's GFBPA claim is factually deficient for the same reasons as Plaintiff's unjust enrichment claim. (Doc. 9, at 14.) For the reasons articulated in its discussion of the unjust enrichment claim, the Court disagrees.

16

negotiated repair by a mechanic shop, a "purely private transaction," from a hobbyist's sale of a few refurbished vehicles a year). To be considered an essentially private transaction, "two factors are determinative: (a) the medium through which the act or practice is introduced into the stream of commerce; and (b) the market on which the act or practice is reasonably intended to impact." Zeeman, 273 S.E.2d at 915.

The Parties dispute whether Defendant's actions impact a consumer marketplace or if this was an isolated, private transaction. Defendant argues that, as pled, the transaction is private because it only involves "two specific patients" and thus, does not fall within the consumer marketplace. (Doc. 9, at 15-16.) Plaintiff disagrees, arguing that because it did not engage in any sort of private deal or negotiations with Defendant with respect to these invoices, it can be presumed Defendant issued the disputed invoices in accordance with its usual billing practices. (Doc. 23, at 17.) Accordingly, Plaintiff argues, such "systematically unfair business practices" have "at least some potential impact on the consumer marketplace." (Id. (quoting Goodwyn v. Capital One, N.A., 127 F. Supp. 3d 1367, 1377 (M.D. Ga. 2015).)

While Plaintiff does not specifically allege that this was Defendant's usual practice, it does contend that not one, but *ten* invoices it received contained the alleged misrepresentations.

17

(Doc. 6, at 10-11.) Moreover, it alleges the misrepresentations occurred first on invoices received in August 2023, relating to one patient, and again on invoices received in October 2023, relating to a different patient. (Id.) Taking these allegations as true, Plaintiff alleges more than "an isolated instance of deceit in a single transaction." Nottingham, 2018 WL 4604023, at *2. Defendant concedes that when the alleged deceptive practice is repeated as to many consumers, it may be found that such conduct touches the consumer marketplace. (Doc. 6, at 10-11; Doc. 9, at 15.) Therefore, the Court finds that because the amended complaint alleges Defendant repeatedly engaged in the deceptive practice of overbilling patients, as evidenced by the ten invoices, the conduct "reasonably has potential to harm the general consuming public." Goodwyn, 127 F. Supp. 3d at 1378.

    2. Heavily Regulated Conduct

O.C.G.A. § 10-1-396 excludes "[a]ctions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States" from the scope of GFBPA. Defendant contends that, like Plaintiff's GUDTPA claim, this claim is exempt from GFBPA because it deals with issues involving workers' compensation, which is heavily regulated. (Doc. 9, at 17.) As discussed at length above, there is a split in authority as to the scope of this exemption. Grammer, 707 F. Supp. 3d at 1397.

18

Nonetheless, the Court need not decide which path to follow, as it has already determined that under either interpretation, this transaction falls outside of the scope of the exemption. The "type of transaction" at the heart of this action is one involving allegedly overinflated, illegitimate charges on medical invoices. (See Doc. 6, at 31-34.) Similarly, the alleged conduct deals with a medical service provider's billing practice. (Id.) While ultimate payment liability may be governed by workers' compensation laws, such regulations are only, at most, tangentially related to the amount recoverable by Defendant, and certainly not germane to the transactions or conduct at issue. Therefore, the Court finds this claim is not exempt by O.C.G.A. § 10-1-396.

**B. Failure to Plead Reliance**

Finally, Defendant contends Plaintiff's GFBPA claim fails as a matter of law because Plaintiff fails to allege causation. (Doc. 9, at 17-18.) "A private [G]FBPA claim has three elements: a violation of the Act, causation, and injury." Zeeman, S.E.2d at 916. To prove causation, a plaintiff alleging misrepresentations "must demonstrate that he was injured as the result of the reliance upon the alleged misrepresentation." Id. Both Defendant and Plaintiff rely on the same arguments presented regarding the unjust enrichment claim. (Doc. 23, at 18-19; Doc. 26, at 17, n.2.) Thus, for the same reasons stated above, the Court finds Plaintiff did

19

not rely on Defendant's misrepresentations when it made its payments but, to the contrary, was admittedly aware it was being overbilled and paid the maximum amount potentially payable anyways. (See Doc. 6, at 3; Doc. 23, at 9.) As such, Defendant's motion to dismiss Count VI is **GRANTED**.

## V. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss (Doc. 9) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's claims for unjust enrichment (Count IV) and violation of GFBPA (Count VI) are **DISMISSED**. Further, because the only remedies available under Plaintiff's remaining claims are declaratory judgment and injunctive relief, Plaintiff's requests for compensatory and punitive damages are **DISMISSED**. Plaintiff's remaining claims may proceed.

**ORDER ENTERED** at Augusta, Georgia, this 6th day of February, 2025.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA